*In re* MARRIAGE OF BARBARA J. DAVIES, Petitioner-Appellant, and JOHN A. DAVIES, Respondent-Appellee.

Second District    No. 81-330

Opinion filed March 25, 1982.—Rehearing denied May 11, 1982.

Seymour C. Axelrood and Paul Ben Axelrood, both of Sewell, Axelrood & Moran, of Chicago, for appellant.

Peter R. Vogel, of Jegen and Carlson, of Glen Ellyn, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

This appeal involves the validity of a judgment for dissolution of marriage entered on October 10, 1979, and a supplemental judgment filed on February 19, 1981, but entered *nunc pro tunc* as of March 28, 1980, which disposed of the questions of maintenance and property rights, as affected by the death of respondent, John A. Davies, on April 8, 1980. The trial court concluded that the intervening death of the respondent, which occurred after a hearing on maintenance and property but prior to a written judgment on those issues, did not affect the judgment on the grounds for dissolution of the marriage or the property rights of the parties and entered a supplemental judgment denying all maintenance and dividing the property of the parties. Petitioner, Barbara J. Davies, has appealed, contending that: (1) the judgment for dissolution is void; (2) the trial court erred in entering the supplemental judgment for dissolution *nunc pro tunc*; and (3) the death of respondent vested the joint tenancy property of the parties in petitioner on the date of his death which was prior to the date when the supplemental judgment was filed.

On September 29, 1978, petitioner filed her petition for dissolution of marriage. Thereafter, an amended petition was filed, the respondent answered, an uncontested hearing on grounds was held, and a written judgment for dissolution of marriage was entered on October 10, 1979. The written judgment for dissolution reserved all of the property rights, maintenance rights, property disposition and attorney fees pending a supplemental judgment, and the cause was continued for determination of those issues to March 3, 1980. There were no children of the marriage.

After a contested hearing on March 3 and 4, 1980, the trial court reserved its decision indicating it would be given by a "letter of opinion within two weeks." On April 9, 1980, a two-page letter of opinion dated March 28, 1980, was filed which made findings of fact, a division of the property rights, barred maintenance and ordered that each party pay his or her own attorney's fees. The letter concluded by stating that "[c]ounsel for the petitioner is directed to prepare and present, after and upon appropriate notice, a judgment order conforming to this letter of opinion. Presentation should be on or after April 7, 1980." On April 14, 1980, respondent's attorney filed a suggestion of the death of respondent which recited the death as occurring on April 8, 1980. Subsequently, the trial court ordered respondent's counsel and the petitioner to submit briefs on the effect of the death on the proceeding. In another letter of opinion filed October 22, 1980, the trial court rendered an opinion "that the intervening death of the respondent does not affect the ruling of the court embodied in its letter of opinion dated March 28, 1980, and that the preparation, presentation and entry of the supplemental judgment in accordance with said letter of opinion was a ministerial act to be performed without further proceedings herein." Petitioner's attorney was directed to prepare and present a written supplemental judgment in conformance with the March 28, 1980, letter of opinion.

On February 19, 1981, a supplemental judgment order was filed by the court and was entered *nunc pro tunc* as of March 28, 1980. Also, on February 19, 1981, respondent's attorney filed a petition pursuant to section 54 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 54) for the appointment of a special administrator to complete the proceedings. On that same date the trial court appointed respondent's attorney, William E. Jeger, as special administrator "for the purpose of defending on behalf of John A. Davies, respondent, now deceased." On March 13, 1981, petitioner filed a petition requesting that the judgment for dissolution of the marriage entered on October 10, 1979, and all subsequent orders be vacated, alleging that the judgment for dissolution of marriage was void pursuant to the recent decision of this court in *In re Marriage of Cohn* (1981), 94 Ill. App. 3d 732, 419 N.E.2d 729. Petitioner then filed another motion to vacate all orders and judgments entered on February 19, 1981. On April 15, 1982, the trial court denied the motions to vacate, and this appeal ensued.

Petitioner contends that the trial court, under the facts herein, was without authority under section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 401(3)) to enter, in the absence of appropriate circumstances, a judgment of dissolution of marriage before adjudicating the other issues involved. Petitioner maintains that our decision in *In re Marriage of Cohn* (1981), 94

Ill. App. 3d 732, 419 N.E.2d 729, *appeal allowed* (1981), 85 Ill. 2d 564, requires that the judgment for dissolution of marriage and supplemental judgment be vacated. Respondent argues that petitioner's failure to raise this issue until March 13, 1981, constitutes a waiver of that argument and further asserts that *Cohn*, which was decided on April 20, 1981, is not determinative of the validity of the judgment for dissolution of marriage entered herein on October 10, 1979.

Our supreme court in *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036, considered the appealability of a judgment entered pursuant to sections 401 and 402 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, pars. 401 and 402) which dissolved the marriage and reserved the questions of maintenance and property division for future court action. The judgment therein did not contain language to the effect that there was no just reason for delaying enforcement or appeal. (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).) The court specifically declined to decide whether a judgment of dissolution of marriage pursuant to section 401 of the Act was a final judgment or was in fact an interlocutory judgment. (79 Ill. 2d 400, 406, 403 N.E.2d 1036, 1038.) Instead, the court held that a judgment of dissolution of marriage, which reserved pending claims and lacked an express finding that there existed no just reason to delay enforcement or appeal, was not an order from which an appeal could be taken.

This court, however, in *In re Marriage of Cohn* (1981), 94 Ill. App. 3d 732, 419 N.E.2d 729, *appeal allowed* (1981), 85 Ill. 2d 564, was faced with the precise question of whether a judgment dissolving a marriage, but reserving property disposition, maintenance and child custody issues for future consideration, was a final judgment. Under the facts in *Cohn* the trial court had expressly found that there was no just reason for delaying enforcement or appeal. The relevant statutory provision at the time of the *Cohn* decision, section 401(3) of the Act, read as follows:

> "Such judgment shall not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property." (Ill. Rev. Stat. 1979, ch. 40, par. 401(3).)

In finding that the judgment of dissolution of marriage in *Cohn* was not a final judgment, we stated:

> "Section 401(3) was derived from section 302(a)(4) of the Uniform Marriage and Divorce Act (9A Uniform Law Annotated §302(a)(4) (1979)). Both the uniform act and the Illinois act contemplate entry of a judgment of dissolution and a reservation of questions of child custody, support, maintenance or property

disposition only under appropriate circumstances. 'Appropriate circumstances' would be where the court does not have *in personam* jurisdiction over the respondent, or inability of a party to pay child support or maintenance if so ordered, or where the court has set aside an adequate fund for child support pursuant to section 503(d) (Ill. Rev. Stat. 1979, ch. 40, par. 503(d)), or where the child or children of the parties do not reside with either parent. (Ill. Ann. Stat., ch. 40, par. 401(3), Historical and Practice Notes, at 105 (Smith-Hurd (1980).) This list of 'appropriate circumstances' is not intended to be exclusive; however, there is no indication in those historical notes that 'appropriate circumstances' may be totally absent.

The circumstances of this case do not provide the 'appropriate circumstances' for dissolving the marriage before adjudicating the other issues involved. In the absence of such appropriate circumstances, the court is without authority to enter a judgment of dissolution unless the court has either 'approved' an agreement between the parties as to these matters, or 'considered' them to the extent it could refuse to make any award if such a result is justified or has made an allotment as the facts require. Once judgment has been entered on these matters, the court has 'made provision' for them and the judgment of dissolution may be entered. Ill. Ann. Stat., ch. 40, par. 401(3), Historical and Practice Notes, at 105 (Smith-Hurd 1980).

While the prerequisites to a judgment of dissolution set forth in section 401(3) are mandatory, not discretionary, these provisions do not operate to limit the subject matter jurisdiction of the trial court. That is conferred by article VI, section 9 of the Illinois Constitution and the Illinois Marriage and Dissolution of Marriage Act, the latter of which in section 413(a) provides: 'A judgment of dissolution of marriage * * * is final when entered, subject to the right of appeal.' Although the provisions of section 401(3) are mandatory, they do not present a jurisdictional requirement in the sense they cannot be waived (see *In re Custody of Charles Sexton* (1981), 84 Ill. 2d 312), and petitioner did not do so in this case. Here petitioner has made timely objections; therefore, she has not waived the mandatory requirements of section 401(3)." (94 Ill. App. 3d 732, 739-40, 419 N.E.2d 729.)

While we held that the provisions of section 401(3) limited the trial court's authority to enter a judgment on the grounds, we concurred with the holdings in *In re Marriage of Nilsson* (1980), 81 Ill. App. 3d 580, 402 N.E.2d 284, on the jurisdictional issue that a judgment finding grounds were proved was final for purposes of Supreme Court Rule 304(a).

Subsequent to our decision in *Cohn* we were presented in *In re Marriage of Garlinski* (1981), 99 Ill. App. 3d 107, 425 N.E.2d 22, *appeal denied* (1981), 85 Ill. 2d 577, with the issue of the effect of the death of a spouse following entry of an order of dissolution of marriage but prior to a determination of property rights. In *Garlinski*, a written judgment of dissolution of the marriage was entered with no mention of reservation of issues, the husband died before any further proceedings occurred, and the trial court ultimately ruled that the marriage was dissolved, but the husband's death abated the cause as to the remaining issues. No motion was made at trial to vacate the judgment of dissolution of marriage. On appeal, the wife argued that the dissolution judgment was void for failure to comply with the Act as interpreted by us in *Cohn*. We held that "the wife did not raise the issue in the trial court * * * and objection to its viability made for the first time on appeal * * *" will constitute a waiver. 99 Ill. App. 3d 107, 109-10, 425 N.E.2d 22.

In the case at bar, objection to the judgment of dissolution of marriage was raised in the trial court by a motion filed specifically citing the *Cohn* decision. Albeit the motion was filed on March 13, 1981, and the judgment of dissolution had been entered on October 10, 1979, the trial court retained jurisdiction since other issues remained to be decided and no Rule 304(a) finding was entered by the trial court on the judgment for dissolution of marriage. We do not find that there is a waiver of this objection and reject respondent's contention to the contrary. We further note that respondent's death had been suggested to the court on April 14, 1980. Respondent alternatively contends that the holding of *Cohn* should not be applied to the present case inasmuch as the modified opinion in *Cohn* was not filed until April 20, 1981, a date subsequent to the conclusion of the trial court proceedings in this case. However, we reject this argument since the *Cohn* decision merely interpreted a statute that was in effect at the time of the proceedings below.

From the foregoing analysis, we would seemingly be compelled to conclude that the judgment for dissolution of marriage was not a final judgment, that the respondent's death had been raised at trial before entry of a final judgment resolving all issues, and that the judgment of dissolution is void; however, section 401(3) of the Marriage and Dissolution of Marriage Act was amended by Public Act 82-197, effective August 14, 1981, with the changes and additions emphasized as follows:

"(3) Such judgment *may* not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property. *The court may bifurcate the judgment for dissolution and reserve questions of child custo-*

*dy, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property regardless of whether (i) the court has in personam jurisdiction over the respondent, or (ii) one of the parties would be unable to pay child support or maintenance if so ordered, or (iii) the court has set aside an adequate fund for child support pursuant to subsection (d) of Section 503, or (iv) the child or children of the parties do not reside with either parent.*

*All judgments for dissolution of marriage reserving any such questions entered prior to the effective date of this amendatory Act of 1981 are declared to be valid as of the date of entry.*

*If any provision of this Section or application thereof shall be adjudged unconstitutional or invalid for any reason by any court of competent jurisdiction, such judgment shall not impair, affect or invalidate any other provision or application of this Section, which shall remain in full force and effect."*

We must therefore determine whether this legislation effected a change in the law and rectified the statutory impediment to finality of the judgment as so determined in our holding in *Cohn*.

The clear import of the amendment allows a judgment for dissolution of the marriage to be entered as bifurcated from the judgment on the remaining issues "regardless of whether (i) the court has in *personam* jurisdiction over the respondent, or (ii) one of the parties would be unable to pay child support or maintenance if so ordered, or (iii) the court has set aside an adequate fund for child support pursuant to subsection (d) of Section 503, or (iv) the child or children of the parties do not reside with either parent." This language gives the trial court discretion to enter a judgment for dissolution of marriage while reserving the remaining issues and purports to declare valid any judgment for dissolution entered prior to the amendment which would otherwise be invalid, unless waived, under our decision in *Cohn*. Thus we believe it is evident that this amendment was enacted as a result of our decision in *Cohn*, and we must now determine whether it must be given retrospective application here in view of the specific language of this amendment which provides that "[a]ll judgments for dissolution of marriage reserving any such questions entered prior to the effective date of the amendatory Act of 1981 are declared to be valid as of the date of entry." If the intent is to make the amendment retrospective in application, we then must decide whether this is constitutional.

■■ It is clear that curative acts are within the power of the legislature, and the legislature may amend an act after a construction by the courts and this constitutes a more recent expression of legislative intent. (*In re Estate of Zimmerman* (1978), 63 Ill. App. 3d 560, 563, 380 N.E.2d 434.)

Also, where, after a statute has been construed and interpreted, the legislature makes a substantial change in the statute, a legislative intent becomes clear to establish a rule different than that announced by the courts. (63 Ill. App. 3d 560, 563, 380 N.E.2d 434.) However, in the present case, the statutory amendment also purports to abrogate our decision in *Cohn* retroactively as well as effecting a change in the law. It has been held that if a statute is ambiguous, a subsequent statutory amendment may be interpreted to indicate a legislative intent to clarify the law, rather than change it, and thus may be applied retroactively. (See *Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495, 426 N.E.2d 817.) Nevertheless, in the case at bar, we find that Public Act 82-197, which was enacted subsequent to our decision in *Cohn*, was an attempt to change the law and not merely a device to clarify existing ambiguity. (See *People v. Youngbey* (1980), 82 Ill. 2d 556, 563, 413 N.E.2d 416.) In *Cohn* we did not find the then existing statute to be ambiguous but, rather, found support for our construction of it in the express language of the statute. By attempting to retroactively overrule our decision in *Cohn*, we find that the General Assembly has invaded the constitutional province of the judiciary in violation of article II, section 1, of the Illinois Constitution of 1970. As our supreme court in *Roth v. Yackley* (1979), 77 Ill. 2d 423, 396 N.E.2d 520, explained:

"The General Assembly's declaration that the amendatory act applies to events which occurred before the effective date of the amendatory statute represents a legislative attempt to retroactively apply new statutory language and to thereby annul a prior decision of this court. This is an assumption by the General Assembly of the role of a court of last resort in contravention of the principle of separation of powers embodied in article II, section I, of the Illinois Constitution of 1970, which provides: 'The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another.' (See *Federal Express Corp. v. Skelton* (1979), 265 Ark. 187, 199, 578 S.W.2d 1, 7-8; *Johnson v. Morris* (1976), 87 Wash. 2d 922, 926, 557 P.2d 1299, 1303; 1A Sutherland, Statutes and Statutory Construction sec. 27.04 (4th ed. 1972).) While the General Assembly has the power to draft legislation and to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent (see *Bruni v. Department of Registration and Education* (1974), 59 Ill. 2d 6, 12; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456), it is the function of the judiciary to determine what the law is and to apply statutes to cases. (See *People v. Nicholls* (1978), 71 Ill. 2d 166, 179; *Belfield v. Coop* (1956), 8 Ill. 2d 293, 307.) The cases cited by the State do not

recognize that the General Assembly may retroactively overrule a decision of a reviewing court. Instead they recognize only the power of the legislature to establish laws prospectively and to alter for future cases interpretations of statutes by reviewing courts. See *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66; *State v. Bowman* (1962), 116 Ohio App. 285, 286-87, 187 N.E.2d 627, 629; *cf. People ex rel. Spitzer v. County of La Salle* (1960), 20 Ill. 2d 18, 28.

In sum, we find that the General Assembly cannot constitutionally overrule a decision of this court by declaring that an amendatory act applies retroactively to cases decided before its effective date." 77 Ill. 2d 423, 428-29, 396 N.E.2d 520.

■■ We also note in this regard that if the statutory amendment were to apply retroactively to the present case, the effect may be to deprive petitioner of a vested right. By virtue of respondent's death on April 8, 1980, petitioner argues she acquired sole title to the property formerly held in joint tenancy with her husband. If the amendment were to apply retroactively, the effect may be to divest petitioner of her interest in this property. It is well settled that the legislature cannot pass a retrospective law impairing the obligation of a contract, or depriving a citizen of a vested right. *People v. Lindheimer* (1939), 371 Ill. 367, 373, 21 N.E.2d 318.

Since we find that Public Act 82-197 cannot be constitutionally applied to this case, our decision in *Cohn* is controlling. Accordingly, since there was an absence of a finding of "appropriate circumstances," the entry of the judgment of dissolution of marriage on October 10, 1979, reserving issues of "property rights, maintenance rights, property distribution, attorneys fees or any other rights the parties may have by virtue of the marital relationship * * *" was not final. We hold only the portion of the amendment extending its application to all judgments for dissolution of marriage entered prior to the effective date of the amendatory Act unconstitutional, and express no opinion on the constitutionality of the balance of the amendment.

■■ Since there was not a final judgment for dissolution of the marriage prior to the death of respondent, this action under the Marriage and Dissolution of Marriage Act was abated upon respondent's death. (*Bushnell v. Cooper* (1919), 289 Ill. 260, 264, 124 N.E. 521; *In re Estate of Chandler* (1980), 90 Ill. App. 3d 674, 677, 413 N.E.2d 486; *Howard v. Howard* (1977), 49 Ill. App. 3d 441, 364 N.E.2d 464.) The rationale for the abatement doctrine is that marriage is a personal relationship and death has settled the question of separation beyond all controversy and deprived the court of jurisdiction in the absence of a statute to the contrary. (*Bushnell v. Cooper* (1919), 289 Ill. 260, 264, 124 N.E. 521.) Respondent's

citation of *Tunnell v. Edwardsville Intelligencer, Inc.* (1969), 43 Ill. 2d 239, 252 N.E.2d 538, is inapposite, as there the death occurred pending an appeal.

Respondent also has argued that the letter of opinion dated March 28, 1980, was a final order and the supplemental judgment order of February 19, 1981, was properly made *nunc pro tunc* as of March 28, 1980, by the trial court. Thus respondent contends that both the judgments were final prior to respondent's death and were valid.

■■ We believe that the application of Supreme Court Rule 272 (Ill. Rev. Stat. 1979, ch. 110A, par. 272) determines this issue. Rule 272 provides:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record."

It has been held that when a letter memorandum of decision by the trial judge clearly required one of the attorneys to prepare a written judgment, the judgment is not final until signed and entered. (*Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 503-04, 378 N.E.2d 243.) Numerous other cases have held that an oral pronouncement of decision with a notation that a written order would follow does not become a final order until the written judgment is entered. (*Green v. Green* (1974), 21 Ill. App. 3d 396, 315 N.E.2d 324; *Grissom v. Buckley-Loda Community Unit School District No. 8* (1973), 11 Ill. App. 3d 55, 296 N.E.2d 624; *Davidson Masonry & Restoration, Inc. v. J. L. Wroan & Sons, Inc.* (1971), 2 Ill. App. 3d 524, 275 N.E.2d 654.) While the primary purpose of Rule 272 was to resolve difficulties which had arisen regarding the timeliness of an appeal and was therefore held inapplicable under the unusual circumstances present in *West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880, we believe that the rule is applicable here. The letter of opinion unequivocally directed petitioner to "prepare and present, after and upon appropriate notice, a judgment order conforming to this letter of opinion." As such, the letter of opinion itself was not a final judgment. To hold otherwise would be contrary to the express language in the letter and would promote inconsistency in the application of Rule 272.

■■■ The subsequent supplemental judgment order filed February 19, 1981, which was entered *nunc pro tunc* as of March 28, 1980, cannot be employed under the guise of correcting the record so as to enter a judgment effective March 28, 1980, when one was never entered at that time. Before a *nunc pro tunc* entry may be made, it is necessary that there

be evidence that a judgment was actually entered. (*Kooyenga v. Hertz Equipment Rentals, Inc.* (1979), 79 Ill. App. 3d 1051, 1056, 399 N.E.2d 216.) A *nunc pro tunc* entry may not be used to supply omitted judicial action, correct judicial errors under the pretense of correcting clerical errors, or cure a jurisdictional defect. (*In re Marriage of McDavid* (1981), 97 Ill. App. 3d 1044, 1051, 425 N.E.2d 442; *Spears v. Spears* (1977), 52 Ill. App. 3d 695, 698, 367 N.E.2d 1004.) A *nunc pro tunc* order is an entry now for something previously done, made to make the record speak now for what was actually done then. (*Hopedale Medical Foundation v. Zagel* (1981), 97 Ill. App. 3d 513, 515, 423 N.E.2d 290.) The action taken by the trial court in the instant case was an attempt to enter a judgment on March 28, 1980, when one never had been entered on that date, and is therefore invalid.

For the reasons stated, both the judgment of dissolution of marriage and the supplemental judgment order are reversed.

Reversed.

LINDBERG and NASH, JJ., concur.